IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ELIZABETH P. GRIMES,          )
                              )
            Plaintiff,        )
                              )
       v.                     )          1:14CV891
                              )
CAROLYN W. COLVIN,            )
Acting Commissioner of        )
Social Security,              )
                              )
            Defendant.        )


**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Plaintiff Elizabeth P. Grimes ("Plaintiff") brought this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), codified as amended at 42 U.S.C. § 1383(c)(3), to obtain review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Act. The court has before it the certified administrative record and cross-motions for judgment.

**I.    BACKGROUND**

Plaintiff protectively filed an application for SSI in April of 2012 alleging a disability onset date of January 1, 2008, later amended to April 24, 2012. (Tr. at 126, 151,

351-57.)[1]  The application was denied initially and again upon reconsideration.  (Id. at 216-52, 262-78.)  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (Id. at 279-80.)  Plaintiff, her attorney, and a vocational expert attended the March 7, 2014 hearing. (Id. at 144-95.)  On April 11, 2014, the ALJ determined that Plaintiff was not disabled under the Act.  (Id. at 123-38.)

Specifically, the ALJ concluded that (1) Plaintiff had not engaged in "substantial gainful activity" during the relevant period; (2) her severe impairments were seizure disorder, fibromyalgia, sleep apnea, obesity, diabetes mellitus with peripheral neuropathy, restless leg syndrome, hypothyroidism, osteoarthritis, and depression; (3) she did not meet or equal a listed impairment; (4) she could perform light work so long as she did not climb ladders, ropes, or scaffolds; she could only occasionally climb ramps or stairs and balance; she must avoid exposure to noise and hazards; and she was limited to carrying out simple, routine, repetitive tasks at a non-production rate. (Id. at 128-30.) The ALJ then concluded that Plaintiff was unable to perform any past relevant work. (Id. at 136.) Next, based on Plaintiff's age as a "younger individual," her

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer.  (Doc. 7.)

-2-

education and her ability to communicate in English, her work experience, and her residual functional capacity ("RFC"), the ALJ found that there were jobs in the national economy that Plaintiff could perform. (Id.) Accordingly, the ALJ entered a decision that Plaintiff was not disabled and denied her benefits. (Id. at 136-38.) Plaintiff requested that the Appeals Council review the ALJ's decision and on August 27, 2014, the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the final decision for purposes of review. (Id. at 1-4.)

## II. **LEGAL STANDARD**

Federal law authorizes judicial review of the Commissioner's denial of social security benefits. 42 U.S.C. § 405(g); Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

-3-

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472.

In undertaking this limited review, this court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability

-4-

to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. § 416.920(a)(4)). "Under this process, the Commissioner asks, . . . [if] the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990). If a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the

-5-

claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[2]

Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Commissioner] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC]

---

[2] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines v. Barnhart, 453 F.3d 559, 562 (4th Cir. 2006) (citation omitted). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall v. Harris, 658 F.2d 260, 265 (4th Cir. 1981). "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

and [the claimant's] vocational capabilities (age, education,
and past work experience) to adjust to a new job." Hall, 658
F.2d at 264-65.  If, at this step, the Commissioner cannot carry
her "evidentiary burden of proving that [the claimant] remains
able to work other jobs available in the community," the
claimant qualifies as disabled.  Hines, 453 F.3d at 567.[3]

## III. **ANALYSIS**

Plaintiff raises six issues.  Specifically, she asserts
that the ALJ: (1) erred at step three; (2) erred in assessing
the severity of her impairments; (3) erred in obtaining and
relying upon an evaluation by a consultant; (4) failed to
consider her non-exertional impairments; (5) erred in analyzing
her credibility; and (6) "committed several legal errors."
(Pl.'s Mem. in Supp. of Mot. for J. on the Pleadings or Summ.
J., or in the Alternative, for Remand ("Pl.'s Br.") (Doc. 13) at
3-18.)  None of these arguments, which the court will evaluate
in the order they implicate the sequential evaluation process,
has merit.

---

[3] A claimant thus can qualify as disabled via two paths
through the five-step sequential evaluation process.  The first
path requires resolution of the questions at steps one, two, and
three in the claimant's favor, whereas, on the second path, the
claimant must prevail at steps one, two, four, and five.

-7-

**A.    The Step Two Analysis is Supported by Substantial Evidence**

Plaintiff contends that the ALJ erred beginning at step two by failing to properly address all her impairments, both severe and non-severe, including her blurry vision, lower extremity swelling, thyroid condition, neurological deficits, scoliosis, reflux ("GERD"), chronic pain, abdominal pain, tinnitus, carpal tunnel syndrome, fatty liver disease, osteoarthritis, non-obstructive coronary artery disease with chest pain, and fibromyalgia.  (Pl.'s Br. (Doc. 13) at 6-11.)

Step two is a threshold determination of whether a claimant has a severe impairment (or combination of impairments) that meets the twelve-month duration requirement and significantly limits the claimant's ability to do basic work activities. 20 C.F.R. § 416.920(a)(4)(ii).  If the Commissioner finds no severe impairments, the claimant is not disabled and the analysis is over.  Id.  However, if a claimant does have a severe impairment or combination of impairments, the ALJ must consider the effects of both the severe and non-severe impairments at the subsequent steps of the process, including the determination of the RFC.  See 20 C.F.R. § 416.923; Social Security Ruling ("SSR") 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *5 (July 2, 1996); Social

-8-

Security Ruling ("SSR") 86-8, Program Policy Statement Titles II and XVI: The Sequential Evaluation Process, 1986 WL 68636, at *5 (January 1, 1986).

Here, at step two, the ALJ concluded that Plaintiff's severe impairments were (1) seizure disorder, (2) fibromyalgia, (3) sleep apnea, (4) obesity, (5) diabetes mellitus with peripheral neuropathy, (6) restless leg syndrome, (7) hypothyroidism, (8) osteoarthritis, and (9) depression. (Tr. at 128.) The ALJ also concluded that Plaintiff's "cognitive disorder" was non-severe and did not result in more than minimal limitations in the ability to perform basic work activities.[4] (Id. citing Tr. at 914-15, 923-45.) Any step two error as to consideration of the alleged additional impairments is harmless given that the ALJ identified nine other severe impairments at step two and properly considered all impairments, both severe

---

[4] Plaintiff faults the ALJ's decision to limit her to simple, routine, repetitive tasks because she relied on "a 2010 opinion for an application that can only determine disability from April 2012." (Pl.'s Br. (Doc. 13) at 7.) In reaching this limitation, the ALJ also relied on the similar finding by consultative examiner Ashley King, Ph.D., in July 2012. (Tr. at 133 referencing Tr. at 635.) Plaintiff also faults the ALJ for not taking a longitudinal approach to the pain resulting from her fibromyalgia. (Pl.'s Br. (Doc. 13) at 8.) However, the ALJ's decision repeatedly discussed fibromyalgia and there is no reason to conclude that the ALJ failed to take into account the fact that fibromyalgia pain may wax and wane. (Tr. at 128, 131, 132, 133.)

-9-

and non-severe, in formulating an RFC assessment.  (Tr. at 136.)
See Ashby v. Colvin, Civil Action No. 2:14-674, 2015 WL 1481625,
at *9 (S.D. W. Va. Mar. 31, 2015) (unpublished) (collecting
cases).

Plaintiff's arguments to the contrary are not persuasive.
Although Plaintiff points to some evidence in support of her
objection, (Pl.'s Br. (Doc. 13) at 6-9), she has failed to point
to evidence in the medical record or elsewhere supporting
limitations beyond those already included in the RFC, which also
suggests that any error here is harmless.  See Gross v. Heckler,
785 F.2d 1163, 1165-66 (4th Cir. 1986); McKenzie v. Colvin,
Civil Action No. 2:14-CV-52, 2015 WL 3442084, at *20 (N.D.
W. Va. May 28, 2015) (unpublished).[5]

Plaintiff also contends that the ALJ failed to consider all
her impairments together. (Pl.'s Br. (Doc. 13) at 10.)  This is
not so because the ALJ specifically indicated that she
"considered all symptoms and the extent to which these symptoms
can reasonably be accepted as consistent with the objective
medical evidence and other evidence." (Tr. at 130.) The ALJ
addressed many of these alleged impairments and symptoms at some

---

[5] Plaintiff also points to her own hearing testimony. (Pl.'s
Br. (Doc. 13) at 10 referencing Tr. at 152-81.)  However, as
explained in greater detail below, the ALJ reasonably concluded
that Plaintiff was not entirely credible.

-10-

length.  (See Tr. at 131-33.)[6]  In sum, this objection is not persuasive because the ALJ proceeded through all the relevant steps and considered all of Plaintiff's symptoms and the objective medical evidence, and because Plaintiff has failed to point to any evidence suggesting that she is more limited than is set forth in her RFC.

---

[6] This court is compelled to address carpal tunnel syndrome separately.  Plaintiff's vocational evaluator concluded that carpal tunnel syndrome was not supported in the medical records provided. (Tr. at 928.) However, because Plaintiff reported prior surgery for carpal tunnel syndrome in her right wrist, and carpal tunnel syndrome and tingling in her left wrist, and took breaks from "constant marking" during the evaluation, the vocational evaluator suggested the "VR Counselor may want to request an assistive technology evaluation to determine if there are alternative data entry devices that she could use to reduce repetitive motion of her hands while working on projects." (Id.) The court concludes that the ALJ did not materially err as to this issue.  Dr. Leonard F. Polanco noted Plaintiff had a full range of motion throughout and that her ability to pinch, grasp, and manipulate objects was 4+/5. (Tr. at 619.) Also, the non-examining state agency physicians both found Plaintiff capable of performing at least light work with no manipulative limitations. (Tr. at 227-28, 246-47.) Additionally, Plaintiff has not pointed to, nor has the court found, any limitations in the record from any medical providers regarding carpal tunnel syndrome.  See, e.g., Camarillo v. Colvin, No. 8:12-cv-355-T-33TBM, 2013 WL 4789244, at *4 (M.D. Fla. Sept. 9, 2013) (unpublished); Cross v. Comm'r of Soc. Sec., Civil Action No. 07-950, 2008 WL 4425851, at *9 (W.D. Pa. Sept. 30, 2008) (unpublished).

**B.    The Step Three Analysis is Supported by Substantial Evidence**

Plaintiff next contends that the ALJ failed to adequately consider and explain why she did not meet or medically equal Listings 3.10 and 11.03. (Pl.'s Br. (Doc. 13) at 3-6.) The Listings are examples of medical conditions that "ordinarily prevent a person from working" in any capacity. Sullivan v. Zebley, 493 U.S. 521, 533 (1990); see also 20 C.F.R. § 416.925(a). A claimant's severe impairment "meets" a listing if it "satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the [one-year] duration requirement." 20 C.F.R. § 416.925(c)(3); Zebley, 493 U.S. at 530-32. An impairment or combination of impairments medically equals a listing when it is at least equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. § 416.926(a)-(b). The ALJ generally must identify the relevant listed impairments and "compare[] each of the listed criteria" to the medical evidence in the claimant's record. Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986).

A cursory explanation in step three is not error so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the ALJ's conclusion. See Smith v. Astrue, 457 F. App'x 326, 328 (4th Cir. 2011) (citing Fischer-Ross v. Barnhart, 431

-12-

F.3d 729, 733 (10th Cir. 2005)). A brief explanation at step

three is also acceptable where the ALJ's discussion of the

evidence at other steps of the evaluation make clear that the

ALJ considered the records relevant to the step three analysis.

See id.; McCartney v. Apfel, 28 F. App'x 277, 279-80 (4th Cir.

2002). "Where the ALJ analyzes a claimant's medical evidence in

one part of his decision, there is no requirement that he rehash

that discussion in his Step 3 analysis." Kiernan v. Astrue,

Civil Action No. 3:12CV459-HEH, 2013 WL 2323125, at *5 (E.D. Va.

May 28, 2013) (unpublished).

### 1. **Listing 3.10**

Listing 3.10 specifically addresses sleep-related breathing

disorders such as sleep apnea, which "are caused by periodic

cessation of respiration associated with hypoxemia and frequent

arousals from sleep." 20 C.F.R. pt. 404, subpt. P, app. 1,

§§ 3.00(H) and 3.10. The disturbed sleep pattern may cause

daytime sleepiness with chronic pulmonary hypertension and/or

disturbances in cognitive functioning, which in turn can affect

memory, orientation and personality. Id. Listing 3.10 provides

that sleep-related breathing disorders should be evaluated under

Listing 3.09 (chronic cor pulmonale) or Listing 12.02 (organic

mental disorders). See 20 C.F.R. pt. 404, subpt. P, app. 1,

§ 3.10.

-13-

Listing 3.09, which addresses cor pulmonale secondary to chronic vascular hypertension, requires "[c]linical evidence of cor pulmonale (documented according to 3.00G) with: A. Mean pulmonary artery pressure greater than 40 mm Hg; Or B. Arterial hypoxemia." 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.09.

Listing 12.02, pertaining to organic mental disorders, requires "[p]sychological or behavioral abnormalities associated with a dysfunction of the brain." Id. at 12.02. The relevant criteria requires demonstration of a loss of specific cognitive abilities or affective changes; the medically documented persistence of one of the following: disorientation as to time and place, memory impairment, perceptual or thinking disturbances, change in personality, mood disturbance, emotional lability, or loss of measured intellectual ability of at least 15 I.Q. points; and at least two of the following: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, or repeated episodes of decompensation, each of extended duration. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.02. To analyze Listing 12.02, the ALJ will look at the "history and physical examination or laboratory tests" to determine if they "demonstrate the presence of a specific organic factor judged to

-14-

be etiologically related to the abnormal mental state and loss of previously acquired functional abilities." Id.

Here, the ALJ mentioned that she had considered Listing 3.10 and explained that "[t]he medical evidence d[id] not document listing level severity, and [that] no acceptable medical source ha[d] mentioned findings equivalent in severity to the criteria of the listed impairments, individually or in combination." (Tr. at 128.) Plaintiff has not pointed to evidence to the contrary, nor has the court discerned any in the record. Moreover, substantial evidence supports the ALJ's determination that Plaintiff had only mild restrictions in daily activities; mild difficulties in social functioning; moderate difficulties in concentration, persistence, or pace; and no episodes of decompensation. (Tr. at 129 referencing 427-34, 521-25, 923-45.) The ALJ's decision is susceptible to

substantial evidence review and the ALJ appropriately determined

that Plaintiff did not meet or medically equal Listing 3.10.[7]

## 2. __Listing 11.03__

Listing 11.03, which deals with nonconvulsive epilepsy, is

described as follows:

> 11.03 Epilepsy-nonconvulsive epilepsy (petit mal,
> psychomotor, or focal), documented by detailed
> description of a typical seizure pattern, including
> all associated phenomena; occurring more frequently
> than once weekly in spite of at least 3 months of
> prescribed treatment. With alteration of awareness or
> loss of consciousness and transient postictal
> manifestations of unconventional behavior or
> significant interference with activity during the day.

20 C.F.R. pt. 404, subpt. P, app. 1, § 11.03.

Here, Plaintiff did not meet her burden of establishing

that she met or equaled the requirement of seizure

frequency/severity described in this and other Listings.  First,

---

[7] Plaintiff asserts various additional errors in the ALJ's
evaluation of the medical evidence in this objection. (Pl.'s Br.
(Doc. 13) at 5.)  These generally amount to no more than a
dispute as to the weight the ALJ gave the relevant evidence in
this case.  Beyond this, the errors Plaintiff asserts are at
most harmless and do not demonstrate that the ALJ's decision is
legally incorrect and/or unsupported by substantial evidence.
See Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No
principle of administrative law or common sense requires us to
remand a case in quest of the perfect opinion unless there is
reason to believe that the remand might lead to a different
result.").  Similarly, to the extent this argument implicates
later steps, Plaintiff has also failed to point to any alleged
specific limitations that have not already been accounted for in
the RFC.

-16-

there is no epilepsy diagnosis on the record.[8]  Second, although
Plaintiff argues that she has "4 big seizures and 5 small
seizures in the last 3 weeks," no medical evidence supports that
allegation.  (Pl.'s Br. (Doc. 13) at 4 citing Tr. at 102, 659.)
That same treatment note only reports spells that could
plausibly impact an ability to work "once every 5-6 weeks."
(Tr. at 659.)  Third, after Plaintiff took Keppra, she was
seizure free for at least six weeks. (Tr. at 513.)  The record
indicates that, despite hospitalizations for complaints of
seizures, Plaintiff's normal EEG results indicated that she was
not epileptic.  (Tr. at 13, 17, 21, 103, 867.)  Last, multiple
treatment notes showed no evidence of epilepsy and no EEG
changes during her spells.  (Tr. at 13, 17, 21, 100, 102-03,
113, 625, 659, 782, 784, 786, 801, 804, 808.)  The ALJ's
decision is susceptible to substantial evidence review and the
ALJ appropriately determined that Plaintiff did not meet or
medically equal Listing 11.03.

---

[8] See, e.g., Hobson v. Soc. Sec. Admin., No. 3:11-0737, 2013
WL 1856679, at *8 (M.D. Tenn. May 2, 2013) (unpublished)
(remanding on other grounds) adopted by 2013 WL 2285758 (M.D.
Tenn. May 23, 2013) (unpublished); Coleman v. Astrue, No.
3:05-0389, 2010 WL 28567, at *13 (M.D. Tenn. Jan. 5, 2010)
(unpublished).

### C.  <u>A Consultative Examination was Properly Relied Upon</u>

Plaintiff next contends that the June 14, 2012 consultative examination by Dr. Leonard F. Polanco was ordered in violation of 20 C.F.R. § 416.912(e), which provides that the Social Security Administration "will not request a consultative examination until we have made every reasonable effort to obtain evidence from your own medical sources." 20 C.F.R. § 416.912(e); (<u>see also</u> Pl.'s Br. (Doc. 13) at 11 <u>referencing</u> Tr. at 615-20.) This argument has no merit.  At the administrative hearing, when asked by the ALJ "if she ha[d] any objection to any of the exhibits that are part of the record[,]" Plaintiff — through counsel — responded, "I do not, your honor." (Tr. at 147.) Moreover, according to Plaintiff, there was no effort to obtain a "narrative report with a query to Plaintiff's own treating physician." (Pl.'s Br. (Doc. 13) at 11.)  However, Plaintiff fails to identify or submit the specific report that should have been obtained prior to the ordering of Dr. Polanco's consultative examination. (<u>Id.</u>)  Consequently, evening assuming Plaintiff has not waived this argument, any error is harmless.

### D.  <u>The ALJ's Credibility Analysis is Well-Supported</u>

Plaintiff's fourth and fifth objections both find fault with the ALJ's credibility analysis. (Pl.'s Br. (Doc. 13) at 11-13.)  The former involves an assertion that the ALJ failed to

-18-

account for the non-exertional limitations Plaintiff experiences, particularly chronic pain and disruptions from psychogenic seizures. (Id. at 11.) The latter involves a more general allegation that the ALJ discredited Plaintiff's testimony and alleged limitations "against the substantial evidence of the record." (Id. at 13.) Neither argument has merit.[9]

Regarding credibility, Craig v. Chater provides a two-part test for evaluating a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996) (citing 20 C.F.R. § 404.1529(b)). If the ALJ determines that such an impairment exists, the second part of the test then requires her to consider the evidence, including the claimant's statements about pain, in order to determine whether the claimant is disabled. Id. at 595-96.

---

[9] Plaintiff also asserts that the ALJ disregarded her testimony "solely upon an old function report filed by the claimant." (Pl.'s Br. (Doc. 13) at 14-15.) However, as set forth below, the ALJ gave at least half a dozen well-supported reasons as to why Plaintiff was not fully credible.

While the ALJ must consider a claimant's statements and other subjective evidence at step two, he need not credit them insofar as they conflict with the objective medical evidence or to the extent that the underlying impairment could not reasonably be expected to cause the symptoms alleged. Id. When the ALJ considers the relevant factors, 20 C.F.R. § 416.929(c)(3), and hears the claimant's testimony and observes her demeanor, the credibility determination receives deference. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

Here, the ALJ completed the two-step Craig analysis. First, the ALJ stated that she had "careful[ly] consider[ed]" the evidence and found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms[.]" (Tr. at 131.) The ALJ therefore discharged her duty under the first step of the Craig analysis.

The ALJ went on to perform the second step of the Craig analysis, concluding further that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Id.)

First, the ALJ partially discredited Plaintiff's allegations of disabling limitations because of her activities of daily living. (Tr. at 134.) Plaintiff indicated she could

-20-

do some light cooking, cleaning, could care for pets, walk for
exercise, pull weeds in a small flower garden, mow the yard,
watch television, teach Sunday School, sing in the choir, use
the email and Internet, and maintain a Facebook page called
Grimes Designs, help her parents out with computer related needs
in their metal business, care for a young granddaughter, and do
some work in the kitchen and thrift shop at the Durham Rescue
Mission. (Tr. at 131, 134, 155-60, 427-34, 452-59, 910.)

Second, the ALJ concluded further that Plaintiff's
impairments were controlled with medication and that this was
another reason her claim of total disability was not credible.
(Tr. at 131.) The record indicates Plaintiff's conditions were
largely stable on medication and that she was sometimes
noncompliant.[10] (Tr. at 617-18, 863, 868, 872, 952.) For
example, on November 8, 2010, Plaintiff stated that she took
Keppra for her seizure disorder resulting in no seizures for
approximately six weeks at that time. (Tr. at 513; see also Tr.

---

[10] Plaintiff takes issue with the conclusion that she was
sometimes noncompliant with treatment recommendations. (Pl.'s
Br. (Doc. 13) at 13.) It does not appear that the ALJ
meaningfully erred in this regard, however, and in any event,
the remainder of the ALJ's credibility analysis still supports
the result in this case. Any error here is thus harmless. See,
e.g., Tomassetti v. Astrue, No. 7:11-CV-88-D, 2012 WL 4321646,
at *11 (E.D.N.C. Aug. 22, 2012) (unpublished) adopted by 2012 WL
4321632 (E.D.N.C. Sept. 20, 2012) (unpublished).

-21-

at 947, 952.) Plaintiff also refused medication recommended for depression. (Tr. at 933, 936-45.)

Third, the ALJ properly noted that Plaintiff's "sporadic work history and her termination in 2007 because her doctor would not write a note covering the time she was out of work, raises a question as to whether [Plaintiff's] continuing unemployment is actually due to medical impairments." (Tr. at 135, 513; see also Tr. at 933, 936-45.)

Fourth, Plaintiff required only conservative and routine treatment. 20 C.F.R. § 416.929(c)(3)(v). For example, although Plaintiff presented to the hospital on several occasions with a variety of complaints including, but not limited to, seizures, each visit resulted in a discharge with normal EEG results with no recommendations for rigorous treatment routines. (Tr. at 13, 17, 21, 103, 867.) Evidence such as this does not support allegations of total disability.

Fifth, the ALJ accurately noted that despite Plaintiff's complaints of debilitating pain, the vocational rehabilitation specialist observed that Plaintiff did not show any signs of discomfort with prolonged sitting; did not frequently change position, grimace, stand up, or lean in her chair; marked with her dominant hand; stood up without hesitation or apparent stiffness; rose to a fully erect position; and moved towards the

-22-

doorway with a normal gait.  (Tr. at 135, 924.)  These actions are
not consistent with Plaintiff's claims of total disability.

Sixth, Plaintiff's subjective complaints were also
inconsistent with substantial evidence of record and thus, were
appropriately afforded little weight.  See 20 C.F.R.
§ 416.927(c)(4).  For example, Dr. Leonard F. Polanco noted
Plaintiff had a full range of motion throughout, no more than
mild antalgic gait, and that her ability to pinch, grasp, and
manipulate objects was 4+/5.  (Tr. at 619.)  Also, the non-
examining state agency physicians both found Plaintiff capable
of performing at least light work and no manipulative
limitations.  (Tr. at 135, 227-28, 246-47.)

Plaintiff's arguments to the contrary are not persuasive.
Plaintiff implies that the ALJ erred by placing too much
emphasis on the fact that she was able to perform some work.
(Pl.'s Br. (Doc. 13) at 17-18 referencing Tr. at 134.)  Yet,
Plaintiff does not contest that she worked, but instead suggests
that she was not as "active" as the ALJ found her to be. (Id.)
Any error here is, at most, harmless because the ALJ pointed to
many other activities of daily living, as well as objective
medical evidence, inconsistent with her testimony.  See, e.g.,
Tomassetti, 2012 WL 4321646, at *11.  The ALJ's credibility
analysis was legally correct and well-supported.

-23-

### E. Plaintiff's Assertion of "Several Legal Errors and Wrongful Application of the Law" is without Merit

#### 1. Albright

Plaintiff next contends that the ALJ failed to properly consider a prior decision by a different ALJ. (Pl.'s Br. (Doc. 13) at 16-17.) Under Social Security Acquiescence Ruling 00-1(4), "where a final decision of SSA after a hearing on a prior disability claim contains a finding required at a step in the sequential evaluation process for determining disability, SSA must consider such finding as evidence and give it appropriate weight in light of all relevant facts and circumstances when adjudicating a subsequent disability claim involving an unadjudicated period." Social Security Acquiescence Ruling 00-1(4), 2000 WL 43774 (Jan. 12, 2000) ("AR 00-1(4)").[11]

In this case, the ALJ considered the decision of the prior ALJ and stated:

> In reaching the residual functional capacity for a range of light work, the undersigned gives great weight to the prior December 7, 2011 Administrative Law Judge (ALJ) decision indicating that the claimant could perform light exertion level work except occasionally climbing ramps and stairs and balancing; never climbing ladders, ropes or scaffolds; and avoiding concentrated exposure to dangerous machinery and unprotected heights (Exhibit BI A). The

---

[11] See AR 00-1(4), at *4 (listing the relevant factors); see also Lively v. Sec'y of Health & Human Servs., 820 F.2d 1391, 1392 (4th Cir. 1987); Albright v. Comm'r of Soc. Sec. Admin., 174 F.3d 473, 477-78 (4th Cir. 1999).

-24-

undersigned has considered the ALJ's findings in
accordance with Acquiescence Ruling 00-1(4) and
<u>Albright v. Commissioner of the Social Security
Administration</u>, 174 F.3d 473 (4th Cir. 1999) . . . .
The undersigned finds that the claimant's medical
condition has not deteriorated since the time of the
decision and new and material evidence not previously
considered does not provide a basis for making a
different finding.  However, the undersigned gives
little weight to the limitation regarding avoiding
moderate exposure to loud music and flashing lights
because there is no recent evidence in the record to
support the limitation.  The undersigned has also
added mental limitations based on new evidence that
has developed regarding this claim.

(Tr. at 135.)

Plaintiff objects to this analysis. (Pl.'s Br. (Doc. 13) at

16-17.)  Plaintiff argues that the ALJ should have given less

weight to the prior ALJ's RFC finding because two years had

passed since the earlier decision was rendered and because the

current decision includes additional severe impairments

(obesity, diabetes, hypothyroidism, osteoarthritis, and

depression) that were not recognized in the prior decision.

(<u>Id.</u>)  This is not a persuasive argument.  The mere passage of

time does not, without more, necessarily require that less

weight be attributed to the RFC from the previous decision.  As

for the additional severe impairments recognized in the current

decision, the ALJ specifically noted that she included

additional mental limitations based on new evidence, which, at

the very least, would therefore presumably include Plaintiff's

-25-

depression.  (Tr. at 135.)  Nor does Plaintiff explain what
limitations she believes her remaining additional severe
impairments imposed that were not already reflected in the
current RFC.[12]

Plaintiff does take issue with a finding included in the
ALJ's decision that she has the RFC "to perform less than light
work."  ((Pl.'s Br. (Doc. 13) at 16 referencing Tr. at 130.)
However, by this, the ALJ meant that Plaintiff could perform
light work with some additional limitations, which are also
reflected in the RFC. (Tr. at 130.) The court doubts Plaintiff
has identified an error, but even if she has, it is at most a
harmless scrivener's error that must be read in the context of

---

[12] Plaintiff asserts that the ALJ erred by relying too
extensively on the older medical opinions of prior consultants
who examined Plaintiff in regards to her prior application for
benefits. (Pl.'s Br. (Doc. 13) at 14.) Plaintiff does not name
these consultants, nor point to their opinions in the record.
In any event, the court does not agree with this
characterization. Instead, it appears that the ALJ considered
all the evidence in the record rather than cherry-picking
evidence to reach a certain predetermined result. (Tr. at
128-36.) Likewise, the ALJ is not obliged to discuss in her
decision each exhibit in the record, consequently, Plaintiff's
various contentions that the ALJ ignored evidence is also
unfounded. (Pl.'s Br. (Doc. 13) at 14-15.) See Diaz v. Chater,
55 F.3d 300, 308 (7th Cir. 1995); see also N.L.R.B. v. Beverly
Enters.-Mass., 174 F.3d 13, 26 (1st Cir. 1999).

the entire decision.[13]   (See, e.g., Tr. at 136 ("[T]he above
[RFC] assessment for a range of light work is supported by the
objective medical evidence, the claimant's activities of daily
living, and the evidence as a whole." (emphasis added)).)

### 2.   **The Appeals Council**

Last, Plaintiff contends that a different result is
warranted in this case because records from Duke-Durham Regional
Hospital were "either overlooked or not previously considered."
(Pl.'s Br. (Doc. 13) at 18.)  If considered, Plaintiff
continues, she would be found to meet Listing 11.03 or,
alternatively, at least have a more restrictive RFC. (Id.) The
court does not agree.  Once the ALJ renders a decision, new and

---

[13] Plaintiff also states here that her "testimony does not
support the ALJ's functional assessment of an ability to
performing light strength work, or any type of work for that
matter." (Pl.'s Br. (Doc. 13) at 17.)  The court has addressed
Plaintiff's objections as to the ALJ's credibility analysis
elsewhere and will not do so again here.  Plaintiff next states
that her "own treating physician who has cared for her since
2007 was of the opinion that she could not work, and would miss
more than 3 days of work each month, among other things. (Ex.
A)." (Id. referencing "Ex. A.")  However, the record does not
contain an "Exhibit A," nor is there an "Exhibit A" attached to
any of Plaintiff's pleadings.  Next Plaintiff states that the
ALJ "ignored" the findings of a consultative examiner, Dr.
Polanco. (Id.) This is not so. The ALJ wrote a paragraph as to
Dr. Polanco and then accurately noted that the doctor "did not
indicate any physical limitations as a result of her
impairments." (Tr. at 133 referencing Tr. at 615-19.)
Plaintiff has failed to demonstrate any error here, meaningful
or otherwise.

material evidence may be submitted to the Appeals Council in requesting review of an adverse ALJ decision. 20 C.F.R. §§ 404.968, 404.970(b). This new evidence is then made part of the record. The Appeals Council is required only to make a decision on whether to review the case and, if it chooses not to grant a review, there is no express requirement to articulate a reason for denying further review. Meyer v. Astrue, 662 F.3d 700, 705-06 (4th Cir. 2011). Remand may be proper, however, if the new evidence is made part of the record, but it has not been weighed by the fact finder or reconciled with other relevant evidence, thus preventing substantial evidence review. Id. at 707.

Here, Plaintiff contends that the evidence she submitted to the Appeals Council was "overlooked" or "not previously considered." (Pl.'s Br. (Doc. 13) at 18.) This is not the case. Rather, the Appeals Council accepted the "additional evidence" into the record and "considered" it but determined that it did not compel a result different than the one found by the ALJ. (Tr. at 1-2.) Plaintiff points to roughly ninety pages of this evidence and concludes that it indicates "that the seizures impact Claimant's activities of daily living, ability to maintain the required pace, persistence and time on task to maintain employment, especially under increased stresses such

a[s] changes in living arrangements and requirement of minimal work as when she was at the Rescue Mission." (Pl.'s Br. (Doc. 13) at 18 <u>citing</u> Tr. 1097-124, 1132-141.)

Here, Plaintiff fails to meaningfully explain in a non-conclusory way how this evidence supports a Listing 11.03 finding or a different RFC. Nor can the court see how this evidence warrants either outcome. This evidence does not contain any limitations not already accounted for in the RFC. Nor does this evidence contain unreconciled information preventing substantial evidence review.

IV. <u>**CONCLUSION**</u>

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is legally correct and supported by substantial evidence.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED**, that Plaintiff's motion for judgment on the pleadings and/or motion for summary judgment (Doc. 12) is **DENIED**, that the Commissioner's motion for judgment on the pleadings (Doc. 15) is **GRANTED**, and that this action is **DISMISSED WITH PREJUDICE**.

A judgment consistent with this Memorandum Opinion and Order will be entered contemporaneously herewith.

-29-

This the 31st day of March, 2016.

                                    _____
                                      United States District Judge